UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT PEARSON JR.,

                              Plaintiff,

              -against-

SERGEANT GESNER #138, et al.,

                              Defendants.

**MEMORANDUM OPINION
AND ORDER**

21-CV-05670 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Robert Pearson Jr. ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, initiated this action on June 28, 2021. (Doc. 1; Doc. 2). The Complaint, at that juncture, proceeded under 42 U.S.C. § 1983 against two entities: (1) New York State; and (2) the Orange County Jail Medical Department. (Doc. 2). The Court, by Order dated August 2, 2021, *inter alia*: (1) dismissed all claims against New York State as barred by the Eleventh Amendment; (2) dismissed all claims against the Orange County Jail Medical Department because departments lack a juridical existence apart from their municipality; and (3) directed, under *Valentin v. Dinkins*, 121 F.3d 72 (1976), that the Orange County Attorney identify the individuals involved in the incidents described within sixty days. (Doc. 8).[1] Plaintiff was directed to file an Amended Complaint within thirty days of receiving that information from the Orange County Attorney. (*Id*. at 3).[2]

---

[1] This case was assigned to this Court on July 22, 2021. (July 22, 2021 Entry).

[2] Two letters from the Orange County Attorney—one dated August 26, 2021 and another dated September 9, 2021—were docketed on September 17, 2021. (Doc. 14; Doc. 15). Those letters advised, *inter alia*, that the Orange County Attorney could not "properly ascertain the identity of the officers/medical staff as alleged by Plaintiff . . . ." (Doc. 14 at 1; Doc. 15 at 1). Because Plaintiff filed the Amended Complaint on September 7, 2021, the Court entered an Order on September 20, 2021 advising that "the Orange County Attorney need not provide any additional information at this time." (Doc. 19).

Plaintiff filed the Amended Complaint, the operative pleading, on September 7, 2021. (Doc. 11, "Am. Compl."). The Amended Complaint proceeds against: (1) Sergeant Gessner ("Gessner"); (2) Officer Morris ("Morris"); (3) Officer Halstead ("Halstead"); and (4) Officer Broeckel ("Broeckel," and collectively, "Defendants").[3] (*Id.*). On September 20, 2021, the Court directed service of the Amended Complaint on Defendants. (Doc. 17).

Defendants, in compliance with this Court's Individual Practices, filed a letter on December 10, 2021 seeking a pre-motion conference before filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 28). Plaintiff did not respond to the request and, on January 4, 2022, the Court issued an Order waiving its pre-motion conference requirement and setting a briefing schedule. (Doc. 30; *see also* Jan. 4, 2022 Entry).

Defendants, in accordance with the briefing schedule set by the Court, filed their motion to dismiss on February 3, 2022. (Doc. 31; Doc. 32; Doc. 33).[4] Plaintiff did not file any opposition papers by the date scheduled and, on the March 18, 2022 deadline to file a reply, Defendants filed

---

[3] Although spelled "Gesner" in the caption, the pleading makes clear that the proper spelling is "Gessner."

[4] Defendants submitted two extraneous items for the Court's consideration on the extant motion: (1) a video taken on April 24, 2021 immediately after the use of pepper spray (Doc. 32-2, "Ex. B"); and (2) Deprivation Order No. 21-031 (Doc. 32-3, "Ex. C"). On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *see also Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011). The Court may also consider an extraneous item "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)); *see also Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 82 (2d Cir. 2021) ("Where an extrinsic document is not incorporated by reference, the district court may nevertheless consider it if the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotation marks omitted)). Plaintiff relied on the video to support his claims, alleging specifically that the events "should be on video tape!!" (Am. Compl. at 4). Ex. B is, thus, considered properly on this motion. *Cf. Hershey v. Goldstein*, 938 F. Supp. 2d 491, 498 n.1 (S.D.N.Y. 2013). The Court cannot consider Ex. C, however, because it is neither integral to—nor referenced within—the pleading.

a declaration in further support of their motion. (Doc. 35).[5] That submission requested "that the motion be deemed fully submitted and unopposed." (*Id*. ¶ 4).

For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

The handwritten portion of the Amended Complaint—the first six pages—reveal little about the facts underlying this case. (*See* Am. Compl. at 1-6).[6]  According to that portion of the pleading, at an unspecified date and time, Plaintiff was at the door of his cell complaining to unspecified corrections officers about the food on his tray. (*Id*. at 4). An unnamed officer, who before this specific interaction had "beat[en]" Plaintiff in some way and for some reason, "put his head into [Plaintiff's] food" and sprayed Plaintiff's right eye "with some typ [sic] of chemical . . . ." (*Id*.). Plaintiff asked that officer for another tray of food, and that request was denied. (*Id*.). Although he was taken "to medical," Plaintiff received no care, was given neither a shower nor a change of clothes, and was placed in a cell without running water. (*Id*.).

Plaintiff's allegations are supplemented by the Inmate Misbehavior Report annexed to the Amended Complaint. That document, authored by Gessner, indicates that the underlying events took place on April 24, 2021. (*Id*. at 9). The narrative on that document reads as follows:

> At 1112 hours, I entered Delta-1 Housing Unit after being advised that Inmate Pearson, Robert (2021-00444) was refusing to comply with staff orders. Inmate Pearson's left arm was placed through the tray slot to prevent staff from securing the tray slot. Inmate Pearson disobeyed all orders to remove his left hand from the tray slot.
>
> At 1116 hours, Inmate Pearson was advised to remove his hand or he would be sprayed with oleoresin capsicum (pepper spray). Inmate Pearson continued to refuse orders. I deployed two one-second

---

[5] Defendants have provided affidavits of service showing that Plaintiff was served with the motion papers. (Doc. 34; Doc. 36).

[6] Citations to the Amended Complaint correspond to the pagination generated by ECF.

3

bursts of oleoresin capsicum through the lower tray slot striking Inmate Pearson in the facial area.

As a result of being pepper-sprayed, Inmate Pearson moved his left arm revealing that Inmate Pearson stuffed paper in the lock latch to prevent closure. Officer Morris #437 removed the paper from the lock latch. Officer Morris and Officer Halstead #148 then pushed Inmate Pearson's left arm through the tray slot back into his cell and secured the lower tray slot.

Inmate Pearson was issued a misbehavior report for this incident.

(*Id*.).[7] Plaintiff was thereafter found guilty of disruptive conduct, tampering with a security device, and disobeying a correction officer. He was penalized with fourteen days' keeplock. (*Id*. at 10).

The video reveals that correction officers—Defendants, presumably—helped Plaintiff into a wheelchair and escorted him to the facility's infirmary. (Ex. B at 0:00-04:25). Plaintiff, upon arrival at the infirmary, was taken to a restroom where he stood from the wheelchair and used an emergency eyewash station. (*Id*. at 04:25-07:07). After washing his eyes, Plaintiff returned to his wheelchair and was taken to another room where he waited to be seen by medical staff. (07:07-07:50). While waiting in this room, a sergeant—whom the Court presumes to be Gessner—stood in the doorway and asked Plaintiff, "What happened, bro? I left you alone for a couple weeks, I come back, and this is where you at." (*Id*. at 07:50-07:55).[8] Plaintiff responded, "Man, keep all your bros away from me. I ain't got no respect for them and they ain't got none for me. That's it. I ain't got none from 'em, and I don't want none from them." (*Id*. at 07:55-08:05).

---

[7] The Inmate Misbehavior Report narrative is a single, continuous block without indentation of any kind. The Court has, accordingly, inserted breaks into the block quotation. *See Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *3 n.3 (S.D.N.Y. June 30, 2021); *Ventillo v. Falco*, No. 19-CV-03664, 2020 WL 7496294, at *4 n.9 (S.D.N.Y. Dec. 18, 2020).

[8] The Court presumes that the sergeant is Gessner because Gessner is the only sergeant named in the Amended Complaint.

Gessner continued, "That's fine, but, I'm trying to talk to you. (*Id*. at 08:05-08:07). Plaintiff answered, "Right. They been playing with my food, that's what's wrong." (*Id*. at 08:07-08:14). Gessner asks, "Who? The kitchen staff? An officer? What're ya thinking?" (*Id*. at 08:14-08:16). Plaintiff declared, "All of them . . . puttin' all type of vile shit in my food. All of that." (*Id*. at 08:16-08:23). Plaintiff continued, "I don't want no help . . . ." (*Id*. at 08:25-08:28). Gessner insisted, "Let me get the nurse to come look atcha." (*Id*. at 08:25-08:29). A female nurse entered the room and addressed Plaintiff as follows: "Hi. Can we, uh, take your vitals?" (*Id*. at 08:29-08:40). Plaintiff answered, "I need more water in my eyes, no." (*Id*. at 08:40-08:43). The nurse asked, "So you don't want care?" (*Id*. at 08:43-08:45). Plaintiff asserted, "Yeah, I want care, you gon' write up what you wanna write up . . . ." (*Id*. at 08:45-08:47). The nurse asked again, "Can we take your vitals?" (*Id*. at 08:47-08:51). Plaintiff conceded, "If you want." (*Id*. at 08:51-08:53). Then, after a few moments of silence interrupted by Plaintiff spitting and sniffling, Plaintiff said, "Matter of fact, you can't take shit. I'm good. Let me back. Fuck you . . . . Take me back." (*Id*. at 09:13-09:20). Officers acquiesced and wheeled Plaintiff back to his cellblock. (*Id*. at 09:20-14:15). Plaintiff, upon arriving back at the cellblock, was placed in a different cell. As officers attempted to place Plaintiff into a different cell, Plaintiff complained belligerently about the fact that he had not yet been given a "decon shower" or change of clothes after being sprayed with chemicals. (*Id*. at 14:15-19:10).

This litigation followed.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while

"[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Moreover, when deciding an unopposed motion to dismiss (as is the case here), "the Court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency. Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.'" *Law v. Corizon Med. Servs.*, No. 13-CV-05286, 2014 WL 2111675, at *3 (S.D.N.Y. May 12, 2014) (quoting *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000)). It is, therefore, appropriate for the Court to test the sufficiency of the Amended Complaint even without the benefit of formal opposition to the motion.

## ANALYSIS

I.    Claims Proceeding Under 42 U.S.C. § 1983

Plaintiff seeks relief under 42 U.S.C. § 1983. (Am. Compl. at 2). That statute provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language . . . creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares*, 2021 WL 2689736, at *6 (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (first alteration in original)). The allegations here concern the Fourteenth Amendment. (*See* Am. Compl. at 4).[9]

A.    Prerequisite of Personal Involvement

As a fundamental prerequisite "[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted). Simply being a supervisor is not enough to

---

[9] Plaintiff pled that he was incarcerated for "a parole violation." (Am. Compl. at 2). The Second Circuit has not yet determined whether individuals incarcerated for parole violations are protected by the Eighth Amendment or the Fourteenth Amendment. *See Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020) ("Horace was a parolee, and we have not addressed where parolees fall on the continuum. The District Court concluded that the Fourteenth Amendment applied to Horace's claim. We need not decide which Amendment applies to this claim, however, because Horace has failed to state a claim under the standard imposed by either Eighth or Fourteenth Amendments."). The Court, accordingly, applies the heightened standard applicable to pretrial detainees under the Fourteenth Amendment here. *See Brooks v. Westchester Cty. Jail*, No. 19-CV-10901, 2021 WL 3292229, at *5 (S.D.N.Y. Aug. 2, 2021) (concluding, where the plaintiff was "detained for allegedly violating the terms of a sentence imposed in an unspecified federal prosecution," that the Fourteenth Amendment applied because the plaintiff "resembled more closely a pretrial detainee than a convicted prisoner").

impute personal involvement onto a defendant; liability exists only where the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

The Amended Complaint lacks any allegation suggesting that Morris, Halstead, or Broeckel participated in an actionable constitutional violation. (*See generally* Am. Compl.). Any claims pressed against Morris, Halstead, or Broeckel are, accordingly, dismissed for want of personal involvement. *See Ortiz v. Bloomberg*, No. 10-CV-09434, 2011 WL 4822829, at *3 (S.D.N.Y. Oct. 7, 2011) ("[T]he only named reference to defendants Bloomberg, Liu, and Harris is in the caption of the Complaint, and the only additional references to these defendants are merely conclusory statements about their personal involvement and liability.").

### B. Excessive Force

"The Fourteenth Amendment's 'Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.'" *Gerard v. City of New York*, 843 F. App'x 380, 382 (2d Cir. 2021) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)); *see also Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (explaining that pretrial detainees "may not be punished in any manner—neither cruelly and unusually nor otherwise" (internal quotation marks omitted)). Establishing excessive force under this standard requires that Plaintiff "show only that the force purposely or knowingly used against him was objectively unreasonable." *Correa v. Lynch*, No. 20-CV-02875, 2021 WL 2036697, at *7 (S.D.N.Y. May 20, 2021) (quoting *Kingsley*, 576 U.S. at 396-97); *Jones v. Reinbolt*, No. 19-CV-06672, 2020 WL 9460508, at *4 (W.D.N.Y. June 1, 2020) (explaining that this claim requires a plaintiff to establish that the force used was "deliberate" and that it was "objectively unreasonable" (internal quotation marks omitted)). Here, "the relevant standard is objective" and requires Plaintiff to establish that "the

force was not rationally related to a legitimate governmental objective or . . . excessive in relation to that purpose." *France v. Morton*, No. 12-CV-05576, 2018 WL 1276860, at *9 (S.D.N.Y. Mar. 9, 2018) (internal quotation marks omitted).

Plaintiff pled plausibly that force was used purposefully.  (*See* Am. Compl. at 4 ("The officer . . . sprayed me in . . . my right eye . . . ."), 9 ("I deployed two one-second bursts of oleoresin capsicum through the lower tray slot striking . . . Pearson in the facial area.")). The sole issue, then, is whether the facts pled suggest plausibly that the force used was objectively unreasonable. The Inmate Misbehavior Report reveals that Gessner discharged the pepper spray in two one-second bursts to maintain discipline and secure Plaintiff's compliance with the repeated direction to remove his arm from the tray slot in his cell door. (Am. Compl. at 9). Such a use of force is not objectively unreasonable. *See, e.g.*, *Taylor v. Nieves*, No. 17-CV-07360, 2020 WL 7028907, at *3 (S.D.N.Y. Nov. 30, 2020) (Nathan, J.) (granting summary judgment on qualified immunity grounds in Fourteenth Amendment excessive force case where pepper spray was used against an uncooperative detainee); *Quinones v. Rollison*, No. 18-CV-01170, 2020 WL 6420181, at *4 (S.D.N.Y. Nov. 1, 2020) (Nathan, J.) (granting summary judgment on a Fourteenth Amendment excessive force claim where "the amount of force used was small" and defendant "used only a two-second burst of pepper spray" against plaintiff); *Vazquez v. Spear*, No. 12-CV-06883, 2014 WL 3887880, at *5 (S.D.N.Y. Aug. 5, 2014) ("[T]he . . . single burst of a chemical agent, which is not a dangerous quantity, is not an unacceptable means of controlling an unruly or disruptive inmate." (internal quotation marks omitted)); *see also Stinson v. City of New York*, No. 18-CV-00027, 2021 WL 3438284, at *13 (S.D.N.Y. July 6, 2021) ("[I]f the force was applied in a good-faith effort to maintain or restore discipline, it will not amount to excessive force under Second Circuit law." (internal quotation marks omitted)).

The excessive force claim against Gessner stemming from two one-second bursts of pepper spray is, consequently, dismissed.

C. Deliberate Indifference to a Serious Medical Need

An official may be found liable for violating a pretrial detainees' due process rights "if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need." *Boomer v. Lanigan*, No. 00-CV-05540, 2002 WL 31413804, at *6 (S.D.N.Y. Oct. 25, 2002) (quoting *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)); *see also Adamson v. Miller*, 808 F. App'x 14, 18 (2d Cir. 2020) (holding that, to prevail on a Fourteenth Amendment deliberate indifference claim, a plaintiff must prove "(1) that the alleged deprivation [of medical treatment] 'pose[d] an unreasonable risk of serious damage to his health,' and (2) 'that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed.'" (quoting *Darnell*, 849 F.3d at 30, 35) (second alteration in original)). Thus, to prevail on a Fourteenth Amendment claim alleging inadequate medical care, a plaintiff must prove an objective prong and a subjective prong.

As to the objective prong, a plaintiff must demonstrate that "the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). "If the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)). While there is no "precise metric" to determine whether a prisoner's medical needs are sufficiently serious, the Second Circuit's "standard 'contemplates a condition of urgency that may result in degeneration or extreme pain.'" *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 236 (2d Cir. 2007) (quoting *Chance v. Armstrong*, 143 F.3d

698, 702 (2d Cir. 1998)). The Court, when determining whether a condition is sufficiently serious,

"considers all relevant facts and circumstances, including whether a reasonable doctor or patient

would consider the injury worthy of treatment; the impact of the ailment upon an individual's daily

activities; and, the severity and persistence of pain." *Chavis v. vonHagn*, No. 02-CV-00119, 2009

WL 236060, at \*43 (W.D.N.Y. Jan. 30, 2009) (citing *Chance*, 143 F.3d at 702). If, however, a

plaintiff alleges that "the inadequacy is in the medical treatment given, the seriousness inquiry is

narrower." *Salahuddin*, 467 F.3d at 280. In that type of scenario, "if the prisoner is receiving on-

going treatment and the offending conduct is an unreasonable delay or interruption in that

treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment

rather than the prisoner's underlying medical condition alone.'" *Id*. (quoting *Smith*, 316 F.3d at

185 (alteration in original)).

　　The analysis of this claim ends at this first element. Notwithstanding the myriad problems

otherwise plaguing the claim's viability, "Plaintiff's incredible discomfort as a result of the pepper

spray does not rise to the level of seriousness required for a constitutional violation." *Wright v.

Trapasso*, No. 15-CV-04428, 2018 WL 4688940, at \*11 (E.D.N.Y. Sept. 28, 2018) (internal

quotation marks omitted); *see also Rodriguez v. Cohall*, No. 21-CV-01810, 2022 WL 1228411, at

\*4 (S.D.N.Y. Apr. 26, 2022) ("Courts in this Circuit have found consistently that plaintiffs who

complained of similar injuries arising out of exposure to chemical agents while in custody failed

to plead adequately that they suffered sufficiently serious injuries."); *Holmes v. City of New York*,

No. 17-CV-03874, 2018 WL 4211311, at \*7 (S.D.N.Y. Sept. 4, 2018) ("[W]hile undoubtedly

uncomfortable and painful . . . temporary effects of chemical spray are not serious medical needs

because they do not rise to the level of producing death, degeneration, or extreme pain."); *Lewis

v. Clarkstown Police Dep't*, No. 11-CV-02487, 2014 WL 1364934, at \*7 (S.D.N.Y. Mar. 31, 2014)

("[C]ourts within this Circuit have previously found that the temporary discomfort caused by pepper spray or mace does not constitute a sufficiently serious injury." (internal quotation marks omitted)).

As Plaintiff has not pled facts substantiating the objective prong of a Fourteenth Amendment claim for deliberate indifference to a serious medical need (i.e., a sufficiently serious injury), the claim is dismissed.[10]

### D.  Conditions of Confinement

Separate and apart from the foregoing, a liberal reading of the Amended Complaint suggests that Plaintiff intends to press a conditions of confinement claim connected to the fact that he missed a meal and was placed in a cell without water after returning from the infirmary. (*See* Am. Compl. at 4). Plaintiff, in order to state a viable conditions of confinement claim under the Fourteenth Amendment, must again plead facts substantiating a two-pronged analysis: "an objective prong showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a subjective prong . . . showing that the officer acted with at least deliberate indifference to the challenged conditions." *Maldonado v. Westchester Cty.*, No. 18-CV-11410, 2021 WL 356155, at *3 (S.D.N.Y. Feb. 2, 2021) (internal quotation marks omitted).

Conditions are "sufficiently serious" at the first step of the analysis where Plaintiff can show that "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health . . . ." *Darnell*, 849 F.3d at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125

---

[10] Even if not dismissed for failure to plead the objective element, the claim would still fail because, *inter alia*, Plaintiff refused medical care at the infirmary. (*See* Ex. B at 04:25-09:20). It is well-settled that a plaintiff will not be heard to complain about deliberate indifference to a serious medical need where he refuses treatment. *See generally Nelson v. Rodas*, No. 01-CV-07887, 2002 WL 31075804, at *16 (S.D.N.Y. Sept. 17, 2002) (concluding, in the Eighth Amendment context, that the plaintiff's refusal to accept treatment "effectively rebuts his claim of deliberate indifference to serious medical needs").

(2d Cir. 2013)). There is no "static test" to assess whether a detainee's conditions of confinement were sufficiently serious to constitute a deprivation of the right to due process; rather, "the conditions themselves must be evaluated in light of contemporary standards of decency." *Id.* (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)). At the motion to dismiss stage, the Court must determine whether the detainee's allegations lead to the plausible inference that the detainee was "deprived of [his] 'basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety'" or "exposed 'to conditions that pose an unreasonable risk of serious damage to [his] future health.'" *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (quoting *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002)); *see also Drew v. City of New York*, No. 18-CV-10719, 2022 WL 19705, at *5 (S.D.N.Y. Jan. 3, 2022); *Burrell v. Maciol*, No. 19-CV-01629, 2022 WL 229063, at *4 (N.D.N.Y. Jan. 6, 2022) (explaining that "objective element" of a conditions of confinement claim "is the same for pretrial detainees and convicted prisoners"), *adopted by* 2022 WL 226696 (N.D.N.Y. Jan. 25, 2022).

Plaintiff pled simply that he missed a meal and was placed in a cell without running water. (Am. Compl. at 4). Without any additional facts, this conclusory allegation is insufficient to plead plausibly that the condition at issue was "sufficiently serious" for the purposes of a conditions of confinement claim. *See, e.g.*, *Drew v. New York City Health & Hosps. Corp.*, No. 19-CV-04067, 2022 WL 44751, at *7 (S.D.N.Y. Jan. 5, 2022) (dismissing conditions of confinement claim where the plaintiff claimed, *inter alia*, "that he was confined to a holding pen with no toilet or running water" without explaining how that condition posed an unreasonable risk to his health); *Johnson v. Schiff*, No. 17-CV-08000, 2019 WL 4688542, at *16 (S.D.N.Y. Sept. 26, 2019) (dismissing conditions of confinement claim where, *inter alia*, "Plaintiff allege[d] that for one day his toilet was dysfunctional"); *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 273 (N.D.N.Y. 2018)

("Burroughs's allegation that his cell did not have running water or a functioning toilet for four days also fails to rise to the level of a constitutional claim."); *Dzwonczyk v. Syracuse City Police Dep't*, 710 F. Supp. 2d 248, 269 (N.D.N.Y. 2008) (dismissing conditions of confinement claim because an overnight deprivation of food and water was not sufficiently serious); *see also Thomas v. Morley*, No. 20-CV-07520, 2022 WL 394384, at *11 (S.D.N.Y. Feb. 9, 2022) (dismissing Eighth Amendment conditions of confinement claim where the plaintiff pled generally that he was denied "unspecified meals for approximately two months" and failed to explain how the deprivations presented a danger to his health); *Junior v. Garrett*, No. 19-CV-03788, 2020 WL 7042811, at *6 (E.D.N.Y. Dec. 1, 2020) (dismissing Eighth Amendment conditions of confinement claim because being housed in a cell without running water for approximately three days "hardly gives rise to a sufficiently serious deprivation" (internal quotation marks omitted)).

As Plaintiff has not pled facts supporting a sufficiently serious condition in the first instance, the conditions of confinement claim is dismissed.

II.   <u>Claims Proceeding Under New York State Law</u>

Having dismissed all feasible claims for relief under federal law—i.e., the claims over which this Court has original jurisdiction—the only claims remaining for consideration are those Plaintiff may intend to pursue under New York State law. In light of the fact that the Court has dismissed those claims over which it has original jurisdiction, the Court declines to exercise jurisdiction over any outstanding state law claims. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 n.6 (2d Cir. 2017); *Offor v. Mercy Med. Ctr.*, No. 17-CV-01872, 2018 WL 2947971, at *7 (S.D.N.Y. May 31, 2018).

Any state law claims Plaintiff wishes to pursue are, accordingly, dismissed without prejudice. The Court expresses no opinion as to the viability of those claims.

## CONCLUSION

For the reasons outlined above, the motion to dismiss is GRANTED with prejudice as to Plaintiff's claims under federal law and without prejudice as to those claims Plaintiff wishes to pursue under New York State law.

Although "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint," it is "not necessary when it would be futile." *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). This action is dismissed with prejudice to the extent outlined above, and—although Plaintiff has not sought permission to do so—leave to file a Second Amended Complaint denied because any amendment would be futile.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum Opinion and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court is respectfully directed to terminate the motion pending at Doc. 31, close this case, and mail a copy of this Memorandum Opinion and Order to Plaintiff.

                                        **SO ORDERED:**

Dated:    White Plains, New York
          May 13, 2022
                                        _____
                                        PHILIP M. HALPERN
                                        United States District Judge

16